ChaHee Lee Olson (SBN: 200493)
**NAGASHIMA LEE, P.C.**
21250 Hawthorne Blvd. Suite 500
Torrance, CA 90503
Phone: 310-697-2334
Fax: 213-474-3105
Email: chahee@nagashimalee.com
Attorneys for Plaintiff ADAN ORDONEZ

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAN ORDONEZ, an individual, | **Case No.:** |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| v. | 1. **GENERAL NEGLIGENCE;** <br> 2. **PREMISES LIABILITY; AND** |
| RED HILL LAVA PRODUCTS, INC., a corporation; BNSF RAILWAY COMPANY, a corporation; and BTU BLOCK AND CONCRETE, INC., a corporation, | 3. **NEGLIGENCE PER SE** <br><br> **UNLIMITED JURISDICTION** <br> Amount in Controversy is More than $75,000 |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff ADAN ORDONEZ ("Plaintiff") is informed and believes, and alleges as follows:

## INTRODUCTION

1.  This is a personal injury action brought by Plaintiff against Defendants RED HILL LAVA PRODUCTS, INC. ("Red Lava"), BNSF RAILWAY COMPANY ("BNSF"), and BTU BLOCK AND CONCRETE, INC., ("BTU") (collectively "Defendants") to recover for personal injuries suffered by Plaintiff when his 18-wheel tractor trailer was struck and severed by a train operated and owned by BNSF on property collectively owned, controlled and/or managed by Red Lava, BTU, and BNSF in Des Moines, New Mexico.  Given the hazardous nature of railroad crossings generally and the particularly unsafe conditions of this crossing, Defendants should have taken measures to minimize the danger but failed

COMPLAINT                                          1

1   to do so.

2   <u>**PARTIES AND JURISDICTION**</u>

3   2.   Plaintiff is an adult individual currently residing at ████████

4   ████████████ in Covina, California.

5   3.   Defendant Red Lava is a corporation engaged in the sale of lava rock

6   products in the United States and Canada.  Defendant Red Lava maintains its

7   principal place of business at 8002 31st Street West, Rock Island, Illinois.

8   4.   Defendant BNSF is a corporation engaged in the operation of rail

9   service throughout the United States.  BNSF maintains its principal place of

10  business at 2650 Lou Menk Drive, Fort Worth, Texas.

11  5.   Defendant BTU is a corporation engaged in the business of concrete

12  supply.  BTU maintains its principal place of business at 115 Cimarron, Raton,

13  New Mexico.

14  6.   Personal jurisdiction over all Defendants is proper pursuant to

15  California Code of Civil Procedure § 410.10 and Federal Rules of Civil Procedure

16  Rule 4(h), as all named Defendants, on information and belief, regularly transact

17  business within California, regularly contract to supply services and/or goods to

18  California, and committed a tortuous act which caused injury within California.

19  7.   Subject matter jurisdiction is also proper pursuant to 28 U.S.C.A. §

20  1332 because complete diversity exists between the parties.

21  8.   Venue is proper pursuant to 28 U.S.C.A. § 1391(b), as this is a

22  transitory action and Plaintiff resides within Los Angeles County, California. The

23  amount of damages sought exceeds the jurisdictional limits of all lower courts

24  which would otherwise have jurisdiction.

25  <u>**GENERAL FACTS**</u>

26  9.   Defendants collectively own, control and/or manage the property and

27  railroad located at or around 504 Folsom Highway, Des Moines, New Mexico,

28  where the subject incident took place (hereinafter "Property").

COMPLAINT                                     2

10. Defendants have a duty to maintain their Property in a safe condition in light of all the circumstances, which include the likelihood of injury to others, seriousness of the potential injury, and the burden of avoiding the risk.

11. These duties of care rise as the risk of injury increases and the severity of the potential harm grows.

12. The railroad crossing located at the Property, which is the subject of this Complaint, is located at or near Defendants BTU and Red Lava's facility ("Subject Crossing").

13. Railroad crossings are dangerous and adequate signage and/or equipment must be installed for people and vehicles to ensure they can safely pass over them.

14. At the time of the subject incident, there were no standing signs or equipment installed indicating this was an active railroad crossing for those entering the Subject Crossing to leave BTU/Red Lava's facility.

15. Moreover, Defendants created a visual obstruction through the dust plumes caused by the unpaved dirt road leading to the Subject Crossing from BTU/Red Lava's facility and railroad tracks that curve around the bend behind BTU/Red Lava's building structures along the railroad tracks.

16. In addition, Defendants caused train horns to be inaudible by way of the presence of building structures along the railroad tracks, which created a sound barrier, and the direction of travel of the railroad tracks prior to entering the Subject Crossing.

17. Plaintiff is a long-haul commercial truck driver, who was invited onto the Property to pick up red lava rocks from BTU/Red Lava's facility on or around May 6, 2020.

18. Defendants collectively owe a duty of care to all invitees on their Property to warn them of any known dangerous conditions thereon, including a duty to maintain proper signage in front of any and all active railroad crossings on

the Property; not create a visual obstruction at the Subject Crossing; and not cause train horns to be less audible or inaudible prior to entering the Subject Crossing.

19.    Defendant BNSF is a common carrier.

20.    BNSF operates and maintains railroad lines and trains which travel through Des Moines, New Mexico at or near BTU/Red Lava's facility, to California and various other states nationwide.

21.    As a common carrier and an entity that owns, operates and/or controls the Subject Crossing at or near BTU/Red Lava's facility, BNSF has a duty to maintain its railroad crossing in a reasonably safe condition, and to operate its train in a reasonably safe manner, in light of the likelihood of injury to others, seriousness of the potential injury, and the burden of preventing the risk.

22.    These duties of care rise as the risk of injury increases and the severity of the potential harm grows.

23.    Railroad crossings are dangerous and adequate signage and/or equipment must be installed for people and vehicles to ensure they can safely pass over them.

24.    BNSF owes a duty of care to operate its train in a reasonably safe manner, and to adequately maintain proper signage in front of any of its active railroad crossings.

## THE INCIDENT

25.    On May 6, 2020, at approximately 3:35PM PDT, Plaintiff's 18-wheeler tractor trailer was struck by a train operated by BNSF on the unmarked Subject Crossing located at 504 Folsom Highway in Des Moines, New Mexico, shortly after his trailer had been fully loaded with rocks at BTU/Red Lava's facility by their employees.

26.    It was Plaintiff's first time traveling to and from BTU/Red Lava's facility and his first time picking up products from Red Lava.

27.    As Plaintiff was leaving BTU/Red Lava's facility with a fully loaded

COMPLAINT                                    4

trailer, he proceeded onto Twin Mount Road, which leads directly to Folsom Highway (Highway 325), with the intention of traveling north towards his final destination.

28.     Shortly after starting down Twin Mount Road in his 18-wheeler tractor trailer, Plaintiff came upon the Subject Crossing.

29.     Plaintiff did not observe any railroad crossing sign, crossbuck sign, crossing gates, railroad signals, or standing stop sign at the Subject Crossing to alert him that he was about to enter an active railroad crossing.

30.     No one at Red Lava, including the individual who processed the paperwork and handled dispatch, cautioned Plaintiff about the active railroad crossing on site or any potential train activity thereon.

31.     As Plaintiff drove his fully loaded tractor trailer on the unpaved Twin Mount Road, his visibility was significantly decreased by plumes of dust kicked up by the moving vehicle while proceeding towards the Subject Crossing.

32.     Plaintiff's visibility was further obstructed by the bend in the railroad tracks as well as structures adjacent to the railroad tracks, which blocked his view of the oncoming train operated by BNSF.

33.     Plaintiff had no line of sight to timely observe the oncoming train which was approaching from around a bend behind several building structures, until he was already at the Subject Crossing.

34.     Plaintiff did not hear any audible train horn sound prior to the collision, as the building structures adjacent to the railroad tracks likely created a sound barrier that prevented the sound of the train horn from being audible to Plaintiff.

35.     Seeing no visual or audible warnings of an oncoming train as he approached the Subject Crossing, Plaintiff looked in both directions and proceeded very slowly toward the Subject Crossing.

36.     Being unaware of the existence of an active railroad crossing in front

1   of him, and seeing no standing stop sign as he entered the Subject Crossing,

2   Plaintiff nonetheless proceeded very cautiously onto the Subject Crossing at a

3   crawling pace. Due to the considerable dust in the air and building structures to his

4   right, Plaintiff's visibility of the surrounding area at the time was severely

5   diminished.

6          37.    It was only after Plaintiff had already begun to cross the Subject

7   Crossing when he first noticed the train rapidly approaching from behind the curve

8   in the railroad.

9          38.    Because he had insufficient time to reverse to avoid a collision,

10  Plaintiff moved his vehicle forward in an effort to clear the tracks before impact.

11         39.    However, by this point, Plaintiff barely managed to drive his tractor

12  cab over the tracks when Defendant BNSF's train collided with the trailer portion

13  of his vehicle.  Plaintiff's trailer was instantly severed in half by the train which did

14  not come to a complete stop until about a mile after the location of the collision.

15         40.    Upon information and belief, Defendant BNSF train was operated by

16  train conductors, James Garner and Christo Barnhoorn ("BNSF crew"). At all

17  relevant times, the BNSF Crew was acting within the course and scope of their

18  employment as employees and/or agents of BNSF.

19         41.    The impact from the train collision caused a traumatic and shocking

20  jolt to Plaintiff's truck cabin.  The impact was so jarring that Plaintiff does not

21  recall whether he lost consciousness.  Shortly after the collision, Plaintiff began to

22  experience immense pain throughout his body.

23         42.    Plaintiff suffered neck and back injuries from the collision and has

24  been forced to significantly reduce his workload given the daily pain he continues

25  to experience.

26         43.    Despite nearly two years of undergoing extensive medical treatment,

27  Plaintiff's condition has not improved, and his neurosurgeon has recommended that

28  he undergo surgeries to his neck and back.

COMPLAINT                                    6

1

## FIRST CAUSE OF ACTION

2

### General Negligence

3

### (Against All Defendants)

4

44.     Plaintiff re-alleges and incorporates by reference all prior paragraphs

5

as though fully alleged herein.

6

7

45.     As the owner/manager of the Property upon which the Subject Crossing

8

is located, and as the owner/manager of the railroad tracks and train running through

9

Des Moines, New Mexico, Defendants collectively owed a duty of ordinary care

10

towards Plaintiff to keep the Subject Crossing reasonably safe.  Defendants breached

11

their duty on May 6, 2020, by failing to keep the Subject Crossing reasonably safe.

12

46.     Defendants failed to place or maintain any signs, railroad crossing signs,

13

crossbuck signs, crossing gates, railroad signals, or a standing stop sign at the Subject

14

Crossing that would have alerted Plaintiff to the fact that he was about to cross an

15

active railroad crossing at the Property.

16

47.     Furthermore, Defendants' natural and manmade factors contributed to

17

making the Subject Crossing particularly dangerous, including (i.) dust plumes

18

caused by the unpaved dirt road leading to the Subject Crossing from BTU/Red

19

Lava's facility, which impaired Plaintiff's visibility of the surrounding area; (ii.)

20

railroad tracks that curve around the bend behind BTU/Red Lava's building

21

structures along the railroad tracks, which prevented Plaintiff from seeing the

22

oncoming train until it was too late; and (iii.) presence of building structures along

23

the railroad tracks which created a sound barrier and impeded the effectiveness of

24

train horns.  Had the Defendants properly installed adequate warning signage at the

25

Subject Crossing to properly address these factors, or otherwise warned Plaintiff of

26

the presence of an active railroad on the Property, and/or operated the train in a

27

reasonably safe manner under the circumstances, Plaintiff would not have crossed

28

the Subject Crossing when he did, and his trailer would not have been severed by the

COMPLAINT                                                    7

train.

48.     At all relevant times, the BNSF crew was operating the train and acting within the course and scope of employment as employees and/or agents of BNSF. On information and belief, Plaintiff alleges the BNSF crew was negligent and breached its duty to Plaintiff by failing to reasonably look out for vehicles as it approached the Subject Crossing, decelerate, and/or take all reasonably appropriate measures to keep the train under control.  The collision was therefore the direct and proximate result of the negligence described herein.

49.     Defendants knew, or should have known, that the bend in the railroad tracks, the presence of structures along those tracks, and the presence of dust from the unpaved dirt road on BTU/Red Lava's Property presented a particularly dangerous condition for any invitees who were crossing the Subject Crossing.

50.     In failing to maintain proper signage or otherwise warn Plaintiff of the danger of the Subject Crossing, and in failing to operate the train at a reasonable speed under the circumstances, Defendants breached their duty to keep the Subject Crossing reasonably safe. As a direct result thereof, Plaintiff suffered significant injuries and damages.

51.     The Defendants' breach of duties proximately caused Plaintiff to enter the Subject Crossing upon which his trailer collided with BNSF's train.  As a direct result thereof, Plaintiff suffered severe injuries to his neck and back, and incurred substantial damages including loss of wages.

## SECOND CAUSE OF ACTION

### Premises Liability

### (Against All Defendants)

52.     Plaintiff re-alleges and incorporates by reference all prior paragraphs as though fully alleged herein.

53.     Plaintiff is informed and believes and thereon alleges that BTU and Red Lava collectively owned, controlled, and/or managed the Property within which the

Subject Crossing was located.

54.    Plaintiff is informed and believes and thereon alleges that BNSF owned, controlled, and/or managed the Subject Crossing and the railroad tracks that run through the Property.

55.    Defendants collectively owed a duty of ordinary care towards Plaintiff to keep the Subject Crossing reasonably safe.  Defendants breached their duty on May 6, 2020, by failing to maintain proper signage at the Subject Crossing located on their Property.

56.    Furthermore, natural and manmade factors contributed to making the Subject Crossing particularly dangerous, including: (i.) dust plumes caused by the unpaved road leading to the Subject Crossing from BTU/Red Lava's facility, which impaired Plaintiff's visibility of the surrounding area; (ii.) railroad tracks that curve around the bend behind BTU/Red Lava's building structures along the railroad tracks, which prevented Plaintiff from seeing the oncoming train until it was too late; and (iii.) presence of building structures along the railroad tracks, which created a sound barrier and impeded the effectiveness of train horns.  Had the Defendants properly installed adequate warning signage at the Subject Crossing to properly address these factors, or, at a minimum, warned Plaintiff of the presence of an active railway on their Premises, Plaintiff would not have crossed the Subject Crossing when he did.

57.    In failing to install any signs, railroad crossings, crossbuck signs, crossing gates, railroad signals, or standing stop sign at the Subject Crossing, and in failing to adequately warn Plaintiff of an active railway at the Subject Crossing, Defendants breached their duty to keep the premises reasonably safe for use by invitees. As a direct result thereof, Plaintiff suffered significant injuries and damages.

//

//

//

COMPLAINT                                                    9

## THIRD CAUSE OF ACTION

### Negligence Per Se

### (Against Defendant BNSF)

58.     Plaintiff re-alleges and incorporates by reference all prior paragraphs as though fully alleged herein.

59.     On information and belief, Defendant BNSF violated and breached applicable laws, regulations and rules pertaining to the safe operation of its trains and the maintenance of railroad crossings at the time of the collision.

60.     The damages sued for are the direct, proximate, and reasonably foreseeable result of the negligence per se of Defendant BNSF and one or more of its agents, including the BNSF crew. Defendant BNSF is vicariously and directly responsible for the negligence per se of its agents, including the BNSF crew.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.     For general damages in an amount to be proven at trial;

2.     For all actual, consequential, and incidental damages, arising from Defendants' conduct, according to proof;

3.     For punitive and/or exemplary damages, according to proof;

4.     For pre-judgment and post-judgment interest as permitted by California law;

5.     For statutory damages pursuant to Civil Code Section 3294, and any other applicable statutory damages;

6.     For attorneys' fees, according to proof;

7.     For costs of suit incurred herein;

8.     For such other relief that the Court may deem just and proper.

//

//

//

COMPLAINT

Respectfully submitted,

Dated: <u>May 6, 2022</u>                              **NAGASHIMA LEE, P.C.**

                              By:    <u>/s/ ChaHee L. Olson</u>
                                     CHAHEE LEE OLSON
                                     Attorneys for Plaintiff
                                     ADAN ORDONEZ

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby requests a trial by jury as to all issues.

Dated: <u>May 6, 2022</u>                              **NAGASHIMA LEE, P.C.**

                              By:    <u>/s/ ChaHee L. Olson</u>
                                     CHAHEE LEE OLSON
                                     Attorneys for Plaintiff
                                     ADAN ORDONEZ

COMPLAINT                              11